UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

BL RESTAURANT OPERATIONS, LLC,

       Plaintiff,

    -v-

701 AMERICA, INC., et al.,

       Defendants.
------------------------------------X

701 AMERICA, INC., et al.,

       Counterclaimants,

    -v-

BL RESTAURANT OPERATIONS, LLC, et al.

       Counterdefendants.
------------------------------------X

11 Civ. 6285 (KBF)

MEMORANDUM OPINION
& ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: FEB 14 2012

KATHERINE B. FORREST, District Judge:

On May 30, 2010, plaintiff BL Restaurant Operations, LLC ("plaintiff" or "BLRO") purchased defendants' Bar Louie restaurant business for approximately $35.8 million. (Am. Compl. ¶ 1.) Included in the transaction were Bar Louie restaurants spread out across twelve states and the District of Columbia. (Id. ¶ 27.) The old adage "caveat emptor" was not a term of this transaction — and when plaintiff got more than it bargained for in connection with its asset purchase (allegedly including tax, licensing and employee issues), it sued. Plaintiff has asserted claims for Breach of Contract/Covenants (Count I) and Breach of

1

Indemnity Obligations (Count II) relating to the Asset Purchase Agreement (the "APA"), Declaratory Judgment regarding various indemnity obligations (Count III), and Breach of Contract relating to a Transition Services Agreement (Count IV).

Defendants 701 America, Inc. ("701 America") and a variety of related entities, along with Roger A. Greenfield Revocable Trust, Roger A. Greenfield, and Theodore Kasemir (collectively, "defendants"), bring counterclaims against both plaintiff BLRO and its parent company BL Restaurants Holding, LLC ("counterclaim defendant" or "BLRH") alleging their own claims. Messrs. Roger Greenfield and Theodore Kasemir assert claims for breach of their employment agreements against BLRO (Counterclaims I and II). All defendants assert a claim for Breach of the APA against BLRO (Counterclaim III) and Fraudulent Inducement against BLRO and BLRH (Counterclaim IV). Defendant 701 America also asserts a Tortious Interference with Contract cause of action against BLRO (Counterclaim V) and a Breach of Contract cause of action against BLRH (Counterclaim VI) related to a subordinated promissory note (the "Note").[1]

---

[1] Counterclaim VI is labeled as being brought by "All Counterclaimants v. BLRH," but it is clear from the content of this count that it is brought only by 701 America. (See Countercl. ¶¶ 75 ("701 America realleges and incorporates . . . .") and 76 ("701 America has been damaged . . . .").) The Note,

2

Defendants now move to dismiss Count III or, in the alternative, strike Counts II and III. They have not moved against Counts I and IV. Plaintiff and counterclaim defendant have moved to dismiss Counterclaims IV and V. For the reasons set forth below, defendants' motion to dismiss or, in the alternative, strike is DENIED in its entirety and plaintiff and counterclaim defendant's motion to dismiss is GRANTED as to Counterclaims IV and V. In addition, the Court sua sponte dismisses Counterclaims III and VI as failing to state a claim.

I.  FACTUAL BACKGROUND

On December 30, 2009, plaintiff and defendants entered into the APA that is at the heart of this dispute. (Am. Compl. ¶ 26.) The transaction closed on May 30, 2010. (Id.) The transaction documents provided that certain liabilities that were specifically set forth on attached schedules would be assumed by plaintiff. (Id. ¶ 28.) Liabilities that were not specifically assumed were excluded. (Id. ¶ 29.) Section 4.6 of the APA contained representations and warranties relating to, inter alia, valid licenses to use the purchased assets. (Id. ¶ 32.) In section 6.17 of the APA, defendants covenanted that they had

---

which is the subject of this breach of contract cause of action, is a contract between 701 America and BLRH. (See Bloom Aff. Ex. 4.)

timely paid all taxes to any Governmental Body (id. ¶ 34); and in section 6.18, they covenanted that they had complied with all applicable laws and Court Orders (id. ¶ 35). Section 10.1 contains indemnification rights and obligations. (Id. ¶ 37.) For purposes of this motion, the critical language is that defendants agreed to "indemnify, defend and hold harmless, the Buyer . . . from and against any Liabilities, claims, demands, judgments, losses, costs, damages or expenses whatsoever (including reasonable attorneys', consultants' and other professional fees and disbursements of every kind . . . ." (Id. ¶ 37.) The indemnification provision related to any breach of the covenants or agreements of the selling parties (here, the defendants), any unassumed liability, taxes, liabilities relating to actual or constructive termination of employees and any breach of certain representations. (Id. ¶ 37.) Section 13 of the APA allowed plaintiff to maintain other rights that it might have in contract or in equity in addition to those set forth in the indemnification provision. (Id. ¶ 38.)

II. LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns

Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 500 U.S. 544, 570, 127 S. Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

III. DISCUSSION

    A.   Defendants' Motion

        1.   Counts I and II of the Amended Complaint

In Counts I and II, plaintiff asserts that defendants have breached the APA in various ways: by failing to comply with certain tax laws, failure to pay certain pre-closing obligations, failure to obtain certain licenses and failure to

5

indemnify with respect to employee related actions and issues. Count I asserts a general breach of contract claim and Count II asserts a specific breach of indemnity obligations. Plaintiff alleges that it has been damaged in connection with these breaches.

Plaintiff has adequately alleged a breach of contract claim under New York law. All that is required is that plaintiff allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011). Each of those elements are plead here. Perhaps in recognition of this, defendants have not moved to dismiss Count I. Defendants move to strike Count II on the basis that it is duplicative of Count I. In the first instance, "[a] motion to strike is not an appropriate vehicle to dismiss claims from a complaint." Koch v. Dwyer, No. 98 Civ. 5519, 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000) (citing Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992)). Regardless, a correct label would not save defendants' motion.

Count II is adequately plead, not entirely duplicative, and, to the extent that it is duplicative, it is plead in the alternative. The law does not require that Count II be dismissed at this stage of the proceedings. See Fed. R. Civ. P. 8(e)(2);

<u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 754 F. Supp. 37, 40 (S.D.N.Y. 1991) ("Dismissal of plaintiff's alternative theories at this stage would violate the liberal policy of Rule 8(e)(2) which allows plaintiffs wide 'latitude' in framing their right to recover.") (citing <u>MacFarlane v. Grasso</u>, 696 F.2d 217, 224 (2d Cir. 1982)). Accordingly, defendants' motion to strike Count II is DENIED.

    2.   Count III of the Amended Complaint

Defendants have moved to dismiss or, in the alternative, strike Count III, which requests a declaration of various rights and responsibilities, as premature. (<u>See</u> Defs./Counterclaimants' Mem. of Law in Supp. of their Mot. to Strike and Dismiss Pl.'s First Am. Compl. at 2.) Again, the motion to strike is not the correct tool to dismiss this cause of action. Nonetheless, Count III survives.

Count III adequately pleads a live case and controversy sufficient to satisfy the standard in the Declaratory Judgment Act. 28 U.S.C. ¶ 2201(a). Plaintiff has asserted that there are various damages and expenses that are, at present, uncertain in amount, but which defendants are obligated to pay. (<u>See</u> Am. Compl. ¶¶ 150-55.) These include costs associated with (1) defending multiple third-party claims, (2) tax assessments and

7

(3) deficient liquor and/or American Society of Composers, Authors and Publishers ("ASCAP") licenses. (Id.) Plaintiff has notified defendants and requested defendants assume these obligations, and either not received a response or not received adequate assistance. (Id. ¶¶ 66, 82, 94.) In addition, plaintiff asserts that it has already incurred significant costs associated with these obligations. (See e.g., id. ¶¶ 10, 50, 78, 81, 115.) It has asked defendants for reimbursement but reimbursement has not been received. (See e.g., ¶ 10.) This presents a sufficiently real controversy to state a claim for a declaratory judgment. See Rosen v. Mega Bloks Inc., No. 06 Civ. 3474, 2009 WL 929474, at *4 (S.D.N.Y. Apr. 7, 2009) ("[Defendant] argues that the declaratory judgment claim is not ripe because it involves a future indemnification obligation that may not mature. The Supreme Court, however, has already ruled that claims of this kind are justiciable.") (citing Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273-74 (1941)); World Wrestling Entm't, Inc. v. Ramos, No. 10 Civ. 1399, 2011 WL 3837088, at *3 (D. Conn. Aug. 30, 2011) ("In general, federal courts have held that declaratory judgments are appropriate means to determine indemnification obligations even before any underlying liability has been established.") (citing

Associated Indem. Corp. v. Fairchailed Indus., Inc., 961 F.2d 32, 35 (2d Cir. 1992)).

To the extent that plaintiff seeks declarations as to obligations that have not yet arisen, that may be a question for another day. See Rosen, 2009 WL 929474, at *7 ("With respect to cases that have not been filed, it is unclear why such relief is even necessary. . . . [Plaintiffs] have made no showing as to what parties may be bringing such suits, whether such cases will ever get filed, or why relief as to future obligations is necessary now. Case law holds that in these circumstances declaratory relief must be denied.") (gathering cases). See also Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) ("Whether [plaintiff] someday will be held subject to environmental liability at some unknown third-party site is speculative. Therefore, whether [defendant] should be required to indemnify [plaintiff] for such liability should it ever arise is not a question of 'sufficient immediacy and reality' to warrant the issuance at this time of a declaratory judgment.") But in the meantime, there are costs being incurred by plaintiff associated with the third-party claims, tax liabilities and appropriate licenses, for which a declaration of rights and responsibilities is entirely appropriate at this time.

Defendants' motion to dismiss or strike Count III of the Amended Complaint is therefore DENIED.

B.  <u>Plaintiff and Counterclaim Defendant's Motion</u>

As part of the overall set of transactions connected with the purchase of the Bar Louie assets, plaintiff and defendants did two things that form the subject of the counterclaims: they offered at-will employment agreements to the two former co-CEO's (Messrs. Greenfield and Kasemir), and they tied payments on the Note to the achievement of certain EBITDA metrics. (Countercl. ¶¶ 1, 17-18, 22-23.) The employment agreements are incorporated by reference into the counterclaims and can properly be considered on this motion to dismiss. <u>Holloway v. King</u>, 161 Fed. Appx. 122, 124 (2d Cir. 2005) ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") Each of the counterclaims grows out of plaintiff's termination of Greenfield and Kasemir's employment.

Counterclaims I and II — brought by Greenfield and Kasemir, respectively, against BLRO — alleges breaches to the employment agreements and requests damages in the form of unpaid severance, dental and health benefits. (Countercl. ¶¶ 33, 38.) BLRO has not moved to dismiss these two counterclaims. Counterclaim III —

brought by all defendants against BLRO — asserts that plaintiff breached the covenant of good faith and fair dealing when it terminated Greenfield and Kasemir, thereby eliminating their opportunity to "grow[] BLRO's business to meet the Company's threshold EBITDA requirements under the Note." (Countercl. ¶¶ 43-50.) In Counterclaim IV, defendants assert against BLRO and BLRH that they were fraudulently induced to enter into the APA with the promise of Greenfield and Kasemir's continued employment, which they claim would have enabled them to expand and develop Bar Louie and therefore meet the EBITDA requirements necessary for vesting and payment under the Note. (Countercl. ¶¶ 51-62.) Counterclaim V — brought by defendant 701 America against BLRO — alleges that when BLRO suspended and terminated Greenfield and Kasemir's employment it resulted in a tortious interference with the Note, which is a contract between 701 America and BLRH. (Countercl. ¶¶ 63-74.) Finally, in Counterclaim VI, 701 America alleges that the Note has been breached by BLRH and they have been damaged thereby.

   1. Counterclaims I and II

  As to Counterclaims I and II, the employment contract between Greenfield and Kasemir is terminable at will. (Bloom Aff. Exs. 5, 6.) These agreements both state: "[P]lease be

advised that your employment is for an indefinite period and is terminable at the will of either the Company [i.e., BLRO] or you, with or without cause at any time, subject only to such limitations as may be imposed by law." (Id.)

The "Conclusion" section in both employment agreements states: "This offer letter constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior understandings, negotiations and discussions, whether oral or written, with regard thereto." (Id.) Nothing in the employment agreement ties it to the Note — or, more to the point — that continued employment was necessary to achieving the EBITDA benchmarks provided under the Note.

The employment agreements do contain provisions relating to severance for termination other than for cause, as well as for the provision of certain medical and dental coverage. (Id.)

    2.   Counterclaim III

Counterclaim III seeks to make the termination of the clearly at-will employment relationship into a breach of the APA. Such allegations stretch both the employment agreements beyond their terms, and read into the APA a connection between it and the employment agreement that simply does not exist. As stated, the employment agreements were terminable at will for

any reason or no reason. Therefore, the mere act of termination cannot be a breach of the employment agreement – nor can it act as a breach of the covenant of good faith and fair dealing with respect to an unrelated contract. The fact that the employment agreement and the APA were part of a series of related transactions does not make them interdependent, and does not allow terms of one to be read into the other, unless that is provided for. Here, it is not. In fact, the opposite is true. The employment agreement contains a concluding "merger clause" (id.), and the APA contains its own merger clause in a provision entitled "Contents of the Agreement": "This Agreement, together with the other Transaction Documents [the definition of which does not include the employment agreement], sets forth the entire understanding of the Parties with respect to the Transactions and supersedes all prior Contracts or understandings among the Parties regarding those matters," (Bloom Aff. Ex. 2 at 54). New York law enforces such clauses according to their terms. See North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 48 (2d Cir. 1999) ("Regardless of what such parol evidence might suggest, we may not consider it because the agreement is unambiguous on its face and because the agreement contains a valid general merger clause.").

Lacking any basis to connect Greenfield and Kasemir's employment relationship to the APA, Counterclaim III, which asserts a claim tying their termination to a breach of the APA, fails to state a claim. It is therefore DISMISSED.

    3.   Counterclaim IV

Counterclaim IV again attempts to tie the employment relationship to the APA — asserting that statements made regarding continued employment induced entry into the APA. The fact that the employment agreement was terminable at will in language that could not be any clearer — combined with the merger clauses contained in both the employment agreement and the APA — eliminate any ability for such allegations to state a claim. See Junk v. Aon Corp., No. 07 Civ. 4640, 2007 WL 4292034, at *7 (S.D.N.Y. Dec. 3, 2007) (noting that, although merger clauses are not bars to fraudulent inducement claims under New York law, "the existence of the merger clause communicates an intention among the parties that the employment contract was to be controlling, and Plaintiff is deemed to have signed the document with this intent."); Wurtsbaugh v. Banc of Am. Sec. LLC, No. 05 Civ. 6220, 2006 WL 1683416, at *7 (S.D.N.Y. June 20, 2006) ("[Plaintiff]'s employment contract defined his status as that of an at-will employee. Any reliance on oral

representations about the term of his employment was therefore unreasonable under New York law."; "[T]he Merger Clause reflects the parties' intention to make the Agreement comprehensive, and further undermines as a matter of law the reasonableness of plaintiffs' asserted reliance on oral representations.") As a result, Counterclaim IV is DISMISSED.

    4.   Counterclaim V

Similarly, the tortious interference with contract claim cannot survive. Defendant 701 America cannot meet the essential element of such a cause of action which is that the allegedly tortious party — here, BLRO — intentionally procured a breach, and that there be a breach. See Highland Capital Mgmt. LP v. Schneider, 198 Fed. Appx. 41, 45 (2d Cir. 2006) ("Under New York law, the elements of tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract, and (5) damages resulting therefrom.") (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 424 (N.Y. 1996). The contract that forms the basis for this claim is the Note. (See Countercl. ¶ 64.) 701 America alleges that somehow

termination of the employment agreement by BLRO was the action that resulted in the breach of the Note that was made between itself and BLRH. (Id. ¶ 66.)

At base, defendant 701 America has not sufficiently pled a breach of the Note. There is no claim that obligations that any party had under the terms of the Note itself were not met. At most and at best, 701 America asserts that termination of the employment relationship meant that the Bar Louie restaurants could not meet the EBITDA targets that would have allowed for payments under the Note. This is not breach of the Note, but actions that led to a failure to trigger payments under the Note.

This claim is illogical. First, the employment agreement was terminable at will — the act of termination cannot therefore be a tortious act. Second, there are no plausible allegations that anyone from BLRO acted with the requisite knowledge of the contract or state of mind. The allegations of this claim do not meet the basic threshold set forth in Twombly and Iqbal. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570, 127 S. Ct. 1955 (2007). This counterclaim must therefore be DISMISSED.

5. Counterclaim VI

The final counterclaim brought against BLRH for breach of contract fails for the reason discussed above – no breach of the Note by BLRH was sufficiently pled. Counterclaim VI is DISMISSED.

IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss Count III or, in the alternative, strike Counts II and III, of the Amended Complaint is DENIED; plaintiff's motion to dismiss Counterclaims IV and V is GRANTED with prejudice. The Court also <u>sua sponte</u> dismisses Counts III and VI with prejudice.

The Clerk of the Court is directed to terminate the motions at Docket Nos. 31, 34 and 36.

SO ORDERED.

Dated:   New York, New York
         February 14, 2012

*[signature]*

KATHERINE B. FORREST
United States District Judge