Robert M. Winter (*pro hac vice*)
Vincent T. Borst (*pro hac vice*)
Diana H. Psarras (*pro hac vice*)
ROBBINS, SALOMON & PATT, LTD.
Attorneys for Defendants/Counterclaimants
25 E. Washington, Suite 1000
Chicago, IL 60602
ph: 312-782-9000
fax: 312-782-6690

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BL RESTAURANT OPERATIONS, LLC<br><br>Plaintiff,<br><br>v.<br><br>701 AMERICA, INC. (f/k/a BAR LOUIE AMERICA, INC.), 706 DEVELOPMENT, INC. (f/k/a BAR LOUIE DEVELOPMENT, INC.), 100 TRADEMARK, INC. (f/k/a BAR LOUIE TRADEMARK, INC.), CONCEPTS AMERICA, INC., ROGER A. GREENFIELD REVOCABLE TRUST, ROGER A. GREENFIELD, and THEODORE KASEMIR,<br><br>Defendants. | Case No. 11-cv-6285 (KBF)<br>ECF Case<br><br>**Hon. Judge Katherine B. Forrest**<br><br>**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS TO PLAINTIFF'S FIRST AMENDED COMPLAINT (ALL COUNTS)** |
| 701 AMERICA, INC. (f/k/a BAR LOUIE AMERICA, INC.), 706 DEVELOPMENT, INC. (f/k/a BAR LOUIE DEVELOPMENT, INC.), 100 TRADEMARK, INC. (f/k/a BAR LOUIE TRADEMARK, INC.), CONCEPTS AMERICA, INC., ROGER A. GREENFIELD REVOCABLE TRUST, ROGER A. GREENFIELD, and THEODORE KASEMIR,<br><br>Counterclaimants,<br><br>v.<br><br>BL RESTAURANT OPERATIONS, LLC, AND BL RESTAURANTS HOLDING, LLC,<br>Counterdefendants. | |

GK671604

Defendants 701 America, Inc. (f/k/a Bar Louie America, Inc.), 706 Development, Inc. (f/k/a Bar Louie Development, Inc.), 100 Trademark, Inc. (f/k/a Bar Louie Trademark, Inc.), Concepts America, Inc., Roger A. Greenfield Revocable Trust, Roger A. Greenfield, and Theodore Kasemir (collectively "Defendants"), by and through their attorneys, Robert M. Winter, Vincent T. Borst and Diana H. Psarras, of Robbins, Salomon & Patt, Ltd., for their Answer to the First Amended Complaint (the "Complaint") of Plaintiff BL Restaurant Operations, LLC ("BLRO"), state and answer as follows:

<u>ANSWER</u>

1.      On May 30, 2010, BLRO acquired certain assets of Defendants' Bar Louie restaurant business for a purchase price of approximately $35.8 million.

**ANSWER**:   For their answer to Paragraph 1 of the Complaint, Defendants admit the allegations therein.

2.      In connection with the acquisition, BLRO assumed only a narrow set of specifically scheduled liabilities.

**ANSWER**:   For their answer to Paragraph 2 of the Complaint, Defendants deny the allegations therein, specifically BLRO's characterization of the scope of the liabilities BLRO assumed.

3.      BLRO relied on Defendants' representations and warranties, covenants and assurances concerning the assets, liabilities and current and past operations of the business.

**ANSWER**:   For their answer to Paragraph 4 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

4.      BLRO has learned of numerous significant compliance issues concerning Defendants' historical operation of their business, which Defendants failed to disclose during due diligence.

**ANSWER**:    For their answer to Paragraph 4 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset Purchase Agreement, all representations and warranties, other than the "Fundamental Representations" (as defined in the Asset Purchase Agreement) contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing.

    5.    First, BLRO learned that prior to Closing, Defendants failed to pay state and local taxes, creating tax liabilities in the approximate amount of $10 million.  Indeed, Defendants failed to pay sales taxes to the appropriate taxing authorities, despite having collected them from customers.  Defendants also failed to pay various other expenses concerning their pre-Closing liabilities.

**ANSWER**:    For their answer to Paragraph 5 of the Complaint, Defendants admit that tax underpayments of certain subsidiaries of Defendants, who were parties to the Asset Purchase Agreement and who are not named as defendants herein (hereinafter the "Unnamed Subsidiaries"), were discovered during pre-contract due diligence by BLRO's financial consultants, Price Waterhouse Coopers, and that cure of these underpayments was built into state-by-state voluntary disclosure agreements ("VDAs") whereby the Unnamed Subsidiaries voluntarily disclosed discovered underpayments to the various states and voluntarily paid the full settlement amounts from Defendants' funds.  Defendants deny they failed to pay "various other expenses" and deny all of the remaining allegations of Paragraph 5.

    6.    Second, BLRO learned that Defendants intentionally mischaracterized and miscoded beverage sales as food sales, in a scheme to avoid the increased costs associated with mandated state liquor licenses based on the actual breakdown of food versus liquor sales.

**ANSWER**:    For their answer to Paragraph 6 of the Complaint, Defendants deny the allegations therein.

    7.    Third, Defendants also failed to obtain another license material to the operation of the business, despite representing and warranting that it had all licenses necessary to use the purchased assets.

**ANSWER**:    For their answer to Paragraph 7 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset Purchase Agreement, all representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing.

> 8.     BLRO has paid in excess of $10 million of Defendants' delinquent pre-Closing tax liabilities and other expenses, and has incurred substantial professional fees in connection with same.  BLRO has also spent a significant amount of time and money investigating the extent of Defendants' misconduct and remedying same, so that BLRO could continue to operate its newly acquired business in compliance with law.

**ANSWER**:    For their answer to Paragraph 8 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that Defendants paid the expenses referred to in Paragraph 8, which were paid with funds received under the Credit Agreement, which in turn were set-off against the purchase price under the Asset Purchase Agreement.

> 9.     BLRO is also faced with multiple third-party claims, including two lawsuits in California alleging unfair labor and wage practices, an U.S. Equal Employment Opportunity Commission ("EEOC") discrimination charge alleging pre-Closing misconduct by Defendants, including sexual harassment, retaliation, and constructive discharge, and a dispute concerning the collection of a judgment BLRO did not assume.

**ANSWER**:    For their answer to Paragraph 9 of the Complaint, Defendants deny the allegations therein.

> 10.     All of these matters for which BLRO has incurred significant expenses, including attorneys' fees, relate to liabilities BLRO did not assume. BLRO has therefore requested that Defendants reimburse or indemnify BLRO for these expenses, but Defendants have either affirmatively refused to do so or failed to respond.

4

**ANSWER:**   For their answer to Paragraph 10 of the Complaint, Defendants admit that BLRO has requested that Defendants pay BLRO for BLRO's alleged expenses, and deny all of the remaining allegations in Paragraph 10.

11.   Plaintiff BLRO is a business entity organized under the laws of Delaware, with its principal place of business in Texas.

**ANSWER:**   For their answer to Paragraph 11 of the Complaint, Defendants state that, upon information and belief, they admit the allegations therein.

12.   Defendant 701 America, Inc. (F/K/A Bar Louie America, Inc.) is a business entity organized under the laws of Illinois, with its principal place of business in Illinois.

**ANSWER:**   For their answer to Paragraph 12 of the Complaint, Defendants admit the allegations therein.

13.   Defendant 706 Development, Inc. (F/K/A Bar Louie Development, Inc.) is a business entity organized under the laws of Illinois, with its principal place of business in Illinois.

**ANSWER:**   For their answer to Paragraph 13 of the Complaint, Defendants admit the allegations therein.

14.   Defendant 100 Trademark, Inc. (F/K/A Bar Louie Trademark, Inc.) is a business entity organized under the laws of Illinois, with its principal place of business in Illinois.

**ANSWER:**   For their answer to Paragraph 14 of the Complaint, Defendants admit the allegations therein.

15.   Defendant Concepts America, Inc. is a business entity organized under the laws of Illinois, with its principal place of business in Illinois.

**ANSWER:**   For their answer to Paragraph 15 of the Complaint, Defendants admit the allegations therein.

16.   Defendant Roger A. Greenfield Revocable Trust is a trust created under the laws of Illinois.

**ANSWER**:    For their answer to Paragraph 16 of the Complaint, Defendants admit the allegations therein.

17.    Upon information and belief, Defendant Roger A. Greenfield is an individual residing in Chicago, Illinois.

**ANSWER**:    For their answer to Paragraph 17 of the Complaint, Defendants admit that Roger A. Greenfield is a resident of Illinois and deny the remaining allegations therein.

18.    Upon information and belief, Defendant Theodore Kasemir is an individual residing in Chicago, Illinois.

**ANSWER**:    For their answer to Paragraph 18 of the Complaint, Defendants admit that Theodore Kasemir is a resident of Illinois and deny the remaining allegations therein.

19.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as this is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the statutory requirements.

**ANSWER**:    For their answer to Paragraph 19 of the Complaint, Defendants admit the allegations therein.

20.    Venue and personal jurisdiction are proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and because the agreements at issue provide that New York is the appropriate forum.

**ANSWER**:    For their answer to Paragraph 20 of the Complaint, Defendants admit the allegations therein.

21.    During the fall of 2009, BLRO and Defendants discussed a transaction involving BLRO's purchase of certain assets of Defendants' Bar Louie restaurant business.   BLRO conducted a due diligence investigation of the business and discovered significant sales and other tax liabilities.

**ANSWER**:    For their answer to Paragraph 21 of the Complaint, Defendants admit the allegations therein.

22.    Discovery and quantification of such liabilities by BLRO and its advisors was difficult because of the lack of internal controls, accounting records and policies and compliance policies maintained by Defendants.

**ANSWER:**   For their answer to Paragraph 22 of the Complaint, Defendants admit the allegations therein.

23.   As the analysis of the tax liabilities progressed, it became clear that the liability would be measured in the millions of dollars and could involve criminal sanctions, penalties and interest for Defendants.

**ANSWER:**   For their answer to Paragraph 23 of the Complaint, Defendants deny the allegations therein.

24.   Defendants had no ability to pay those liabilities through the cash that was available to the Bar Louie business.

**ANSWER:**   For their answer to Paragraph 24 of the Complaint, Defendants deny the allegations therein.

25.   In an effort to save the business and the transaction, BLRO proposed a transaction structure that would: (a) permit the sale to BLRO of certain assets of Defendant's Bar Louie restaurant business; and (b) provide for a line of credit upon which Defendants could draw in order to satisfy the tax liabilities (the "Tax Payment Credit Line").

**ANSWER:**   For their answer to Paragraph 25 of the Complaint, Defendants deny that there was any transaction to "save" until the parties mutually agreed to the Asset Purchase Agreement, deny that BLRO unilaterally proposed the transaction structure and admit the remaining allegations therein as to some, but not all, of the Defendants, and deny as to some, but not all, of the Defendants.   Defendants affirmatively state that the transaction structure was mutually negotiated by the parties.

26.   Defendants entered into: (a) an Asset Purchase Agreement dated December 30, 2009 (which, as amended, is referred to herein as the "Asset Purchase Agreement") with BLRO, pursuant to which Defendants agreed to sell to BLRO certain assets of their Bar Louie restaurant business for the approximate amount of $35.8 million (the "Transaction"); and (b) a Credit Agreement dated December 30, 2009 (which, as amended, is referred to herein as the "Credit Agreement") with an affiliate of BLRO, pursuant to which BLRO extended the Tax Payment Credit Line to Defendants.   The Closing of the Transaction took place on May 30, 2010 (the "Closing").

7

**ANSWER**:    For their answer to Paragraph 26 of the Complaint, Defendants admit the

allegations therein.

27.    The sale included, among other things, Bar Louie restaurant assets
in California, Colorado, Kentucky, Michigan, Missouri, New York, Ohio,
Pennsylvania, Virginia, Washington, DC, Wisconsin, Florida and Illinois.

**ANSWER**:    For their answer to Paragraph 27 of the Complaint, Defendants admit the

allegations therein.

28.    In the Asset Purchase Agreement, the parties identified the assets
that would be purchased and specifically enumerated a very narrow set of
liabilities that would be assumed by BLRO (the "Assumed Liabilities").

**ANSWER**:    For their answer to Paragraph 28 of the Complaint, Defendants admit that

the Asset Purchase Agreement identified the assets that would be purchased and deny that the

Asset Purchase Agreement "enumerated a very narrow set of liabilities that would be assumed by

BLRO."   Answering further, Defendants affirmatively state that the many liabilities BLRO

agreed to assume were set forth in the Asset Purchase Agreement and its schedules.

29.    Specifically, pursuant to Section 2.5(b) of the Asset Purchase
Agreement, entitled "<u>Assumption of Liabilities;</u>" the parties expressly. agreed that
BLRO would not assume "any Liability that is not specifically identified as an
Assumed Liability under Section 2.5(a), (each, an "Unassumed Liability")."

**ANSWER**:    For their answer to Paragraph 29 of the Complaint, Defendants admit that

the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the

allegations of Paragraph 29 fairly represent the entirety of the agreement of the parties.

30.    There were only seven types of specifically identified Assumed
Liabilities listed on Schedule 2.5(a), none of which are applicable to the claims at
issue here.

**ANSWER**:    For their answer to Paragraph 30 of the Complaint, Defendants admit that

there are seven (7) types of Assumed Liabilities listed on Schedule 2.5(a) and deny the remaining

allegations therein.

31.    Because BLRO identified a number of potential issues during due diligence, most notably concerns about Defendants' compliance with tax laws and regulations, BLRO insisted that Defendants make a number of broad representations, warranties and covenants concerning the business.

**ANSWER**:    For their answer to Paragraph 31 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that the terms of the Asset Purchase Agreement control and that any references to alleged representations, warranties and covenants not contained in the Asset Purchase Agreement are barred by the doctrine of merger.

32.    In Section 4.6 of the Asset Purchase Agreement, entitled "Title to Purchased Assets and Related Matters," the Defendants represented and warranted that they "have good and marketable title to, valid leasehold interests in, or valid licenses to use all of the Purchased Assets, free from any Encumbrances except those specified in Section 4.6 of the Disclosure Schedule... (emphasis added)."

**ANSWER**:    For their answer to Paragraph 32 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 32 fairly represent the entirety of the agreement of the parties.

33.    In Section 6.3 of the Asset Purchase Agreement, entitled "Satisfaction of Liabilities," Defendants covenanted that, "After the Closing, the Sellers shall (and the other Selling Parties shall cause the Sellers to) satisfy, in accordance with the terms thereof, any and all of their Liabilities that are not Assumed Liabilities."

**ANSWER**:    For their answer to Paragraph 33 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 33 fairly represent the entirety of the agreement of the parties.

34.    In Section 6.17 of the Asset Purchase Agreement, entitled "Sales, Use and Other Taxes," Defendants covenanted that, "Between the date hereof and the Closing Date, each Seller shall, and shall cause each Affiliate of each Seller to, timely pay all sales, use, income, franchise and other Taxes owed by it to any applicable Governmental Body."

**ANSWER**:   For their answer to Paragraph 34 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 34 fairly represent the entirety of the agreement of the parties.

35.   In Section 6.18 of the Asset Purchase Agreement, entitled "Compliance with Laws," Defendants covenanted that, "Between the date hereof and the Closing Date, the Selling Parties shall cause each of their Affiliates to, comply in all material respect[s] with the requirements of applicable Laws and all Court Orders applicable to them or the Business."

**ANSWER**:   For their answer to Paragraph 35 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 35 fairly represent the entirety of the agreement of the parties.

36.   The parties also set forth specific indemnity rights arising out of Defendants' breaches of their representations and covenants.

**ANSWER**:   For their answer to Paragraph 36 of the Complaint, Defendants admit the allegations therein.

37.   Specifically, pursuant to Section 10.1, entitled "Indemnification...By the Selling Parties," Defendants agreed that:

> "[Defendants] jointly and severally, shall indemnify, defend and hold harmless the Buyer...from and against any Liabilities, claims, demands, judgments, losses, costs, damages, or expenses whatsoever (including reasonable attorneys', consultants' and other professional fees and disbursements of every kind, nature and description incurred by such Indemnified Buyer Party in connection therewith including consequential and punitive damages) (collectively, "Damages") that such Indemnified Buyer Party may sustain, suffer, or incur and that result from, arise out of, or relate to:
>
> (a)   any breach of any of the covenants or agreements of the Selling Parties contained in this Agreement or in the Closing Certificates...
>
> (c)   any Unassumed Liability, regardless of whether or not the Disclosure Schedule discloses any such Unassumed Liability...
>
> (d)   any Liabilities for (i) Taxes relating to the Business or the Purchased Assets for all taxable periods ending on or prior to the Closing Date and any portion of such period that

begins before and ends after the Closing Date attributable to the portion of such period ending on the Closing Date (the "Pre-Closing Tax Period") (whether or not such Taxes have been due and payable), (ii) Taxes of the Sellers or any Affiliate of the Sellers and any and all Taxes of any Person imposed on the Buyer or any of its Affiliates as a transferee or successor of the Sellers, by Contract or pursuant to any Law, which Taxes relate to an event or transaction first occurring before the Closing Date....

(e)  any Liability arising out of or related to the actual or constructive termination of any employee... [and]

(k)  any breach of any Fundamental Representations...

**ANSWER**:   For their answer to Paragraph 37 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 37 fairly represent the entirety of the agreement of the parties. Answering further, Defendants affirmatively state that pursuant to Section 10.4 of the Asset Purchase Agreement, any claim for indemnification must have been given by a "Claim Notice" under Section 10.3 on or before the applicable "Expiration Date" or the claim for indemnification is invalid.  The Expiration Date for claims based upon any alleged breach of representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6, was May 30, 2010, the date of the Closing.

38.  However, the indemnity provisions are not BLRO's exclusive remedy.  Specifically, Section 13, entitled "Remedies," provides that, "The indemnification rights under Section 10 are independent of and in addition to such rights and remedies as the Parties may have at Contract or in equity or otherwise for any misrepresentation, breach of warranty, or failure to fulfill any agreement or covenant hereunder on the part of any Party, including the right to seek specific performance, rescission, or restitution, none of which rights or remedies shall be affected or diminished by Section 10." (emphasis added).

**ANSWER**:   For their answer to Paragraph 38 of the Complaint, Defendants reallege and incorporate by reference their answer to Paragraph 37 of the Complaint as though fully set forth herein.

39.     Indeed, BLRO specifically preserved its right to assert, outside the scope of the process set up by the parties for indemnity claims, independent breach of-contract claims for any breaches of the provisions of the Asset Purchase Agreement.

**ANSWER**:     For their answer to Paragraph 39 of the Complaint, Defendants deny the allegations therein.

40.     Accordingly, Defendants' improper conduct described below gives rise to both causes of action for breach of contract and for indemnity.

**ANSWER**:     For their answer to Paragraph 40 of the Complaint, Defendants deny the allegations therein.

41.     During due diligence, BLRO discovered that Defendants had been noncompliant with the tax laws for a substantial amount of time.

**ANSWER**:     For their answer to Paragraph 41 of the Complaint, Defendants deny the allegations therein.

42.     Among other issues, Defendants collected sales tax for food and beverage consumption at their various restaurants, but they declined to pay those taxes over to the appropriate taxing authorities, in direct contravention of the applicable state and local tax laws and regulations, many of which provide for criminal sanctions, penalties and interest.

**ANSWER**:     For their answer to Paragraph 42 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that Defendants caused taxes to be paid pursuant to the VDAs.

43.     BLRO informed Defendants that BLRO could not move forward with the Transaction unless the Defendants approached the relevant states, voluntarily disclosed the failure to pay taxes, and paid all amounts due and owing.

**ANSWER**:     For their answer to Paragraph 43 of the Complaint, Defendants deny the allegations therein.

44.     Upon learning that Defendants were unable to pay those tax liabilities and therefore unable to move forward with the Transaction, an affiliate of BLRO agreed to provide Defendants with a secured line of credit, pursuant to

the terms of the Credit Agreement, to be used for funding payment of those delinquent tax liabilities.

**ANSWER**:   For their answer to Paragraph 44 of the Complaint, Defendants admit that an affiliate of BLRO agreed to provide Defendants with a line of credit pursuant to the terms of the Credit Agreement to be used for funding payment of certain Unnamed Subsidiaries' tax liabilities, but deny the remaining allegations therein.   Answering further, Defendants affirmatively state that the amounts funded via the Credit Agreement were set-off against the purchase price under the Asset Purchase Agreement.

45.    At BLRO's insistence, Defendants entered into Voluntary Disclosure Agreements and other arrangements ("VDAs") with the following states: California, Colorado, Kentucky, Michigan, New York, Ohio, Pennsylvania, Virginia, Wisconsin, Florida and Illinois, pursuant to which Defendants agreed to pay all delinquent sales tax obligations in exchange for a release from civil and criminal liability.

**ANSWER**:   For their answer to Paragraph 45 of the Complaint, Defendants deny the allegations therein.   Answering further, Defendants affirmatively state that certain Unnamed Subsidiaries entered into the VDAs.

46.    In evaluating the final purchase price, the parties estimated the liabilities Defendants owed in delinquent tax obligations pursuant to those VDAs and provided a mechanism in the Asset Purchase Agreement to compensate BLRO for any inaccuracies in such estimates.  The actual amount of Defendants' tax liabilities has proven greater than those estimates.

**ANSWER**:   For their answer to Paragraph 46 of the Complaint, Defendants deny the allegations therein.

47.    The parties estimated those tax liabilities to be approximately $10.4 million.

**ANSWER**:   For their answer to Paragraph 47 of the Complaint, Defendants deny that $10.4 million was estimated or owed in tax liabilities as of Closing, admit that prior to Closing

tax liabilities were estimated at $10.4 million, but deny that the pre-Closing estimated tax liabilities were the responsibility of any of the Defendants.

48.    BLRO has already paid taxes in excess of the parties' estimates in the approximate amount of $1 million.

**ANSWER**:    For their answer to Paragraph 48 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

49.    This amount includes payments BLRO made for Defendants' additional delinquent pre-Closing tax liabilities incurred outside the scope of the VDAs, including without limitation:

    (a)    Other sales and use taxes in the amount of $498,671;
    (b)    Other income taxes in the amount of $19,876;
    (c)    Tax assessments from the City of Chicago in the amount of $89,170;
    (d)    Ohio CAT taxes in the amount of $48,246;
    (e)    May sales tax paid by BLRO in excess of the parties' estimate in the amount of $10,237; and
    (f)    Miscellaneous other pre-Closing taxes, including without limitation real estate taxes in the amount of $46,348, and personal property taxes in the amount of $111,197.

**ANSWER**:    For their answer to Paragraph 49 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

50.    Post-Closing, BLRO has also incurred and continues to incur a substantial amount of professional fees to resolve the many tax issues created by Defendants' misconduct, to date in the amount of $456,188.

**ANSWER**:    For their answer to Paragraph 50 of the Complaint, Defendants deny the allegations therein.

51.    Additionally, post-Closing, BLRO has paid four different types of expenses that arise from the pre-Closing obligations of Defendants and for which Defendants retained responsibility pursuant to the Asset Purchase Agreement.

**ANSWER**:    For their answer to Paragraph 51 of the Complaint, Defendants deny the allegations therein.

52.    First, BLRO paid direct capital lease payments in the amount of $9,070.  BLRO also paid a direct capital lease settlement payment in the amount of $14,000.

**ANSWER**:    For their answer to Paragraph 52 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.  Answering further, Defendants affirmatively state that any expenses paid by BLRO that were not required to be paid by BLRO under the Asset Purchase Agreement were voluntarily assumed by BLRO.

53.    Second, BLRO paid invoices for pre-Closing expenses in the amount of $226,738, including those that were not included in the Accounts Payable assumed by BLRO and identified at Schedule 2.5(a) of the Asset Purchase Agreement.

**ANSWER**:    For their answer to Paragraph 53 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.  Answering further, Defendants affirmatively state that any expenses paid by BLRO that were not required to be paid by BLRO under the Asset Purchase Agreement were voluntarily assumed by BLRO.

54.    Third, for a short time post-Closing, BLRO and Defendants shared a corporate headquarters at Pickwick Ave in Glenview, Illinois, where Defendants acted as landlord and BLRO as tenant.

**ANSWER**:    For their answer to Paragraph 54 of the Complaint, Defendants admit the allegations therein.

55.    In exchange for rent relief in an agreed upon amount for rent BLRO would have owed to Defendants, BLRO agreed to pay certain expenses that were the Defendants' obligations.  However, the expenses BLRO paid on Defendants' behalf exceeded the parties' agreement by $6,145.  Such amounts are required to be reimbursed by Defendants to BLRO.

**ANSWER**:   For their answer to Paragraph 55 of the Complaint, Defendants deny the

allegations therein.

56.   Fourth, BLRO has paid and continues to incur other expenses arising from Defendants' pre-Closing failure to pay rent and/or property taxes. Indeed, BLRO has already paid the amount of $13,472 and has received $45,451 in additional charges.

**ANSWER**:   For their answer to Paragraph 56 of the Complaint, Defendants deny the

allegations therein.

57.   Defendants' pre-Closing tax liabilities were specifically defined in Section 2.5(b) of the Asset Purchase Agreement as Unassumed Liabilities for which BLRO is not responsible: "any Liability that is not specifically identified as an Assumed Liability under Section 2.5(a) (each, an "Unassumed Liability"), including all of the following... (iii) all Liabilities for (A) Taxes relating to the Business or the Purchased Assets for any Pre-Closing Period and (B) Taxes of the Sellers or any Affiliate of the Sellers...."

**ANSWER**:   For their answer to Paragraph 57 of the Complaint, Defendants deny the

allegations therein.

58.   Defendants' pre-Closing expenses are also Unassumed Liabilities for which Defendants are responsible because they were not specifically identified as Assumed Liabilities in Schedule 2.5(a).

**ANSWER**:   For their answer to Paragraph 58 of the Complaint, Defendants deny the

allegations therein.

59.   Pursuant to Sections 6.3, 6.17 and 6.18 of the Asset Purchase Agreement, discussed above at Section II(A), Defendants covenanted that they would satisfy all Unassumed Liabilities, pay all taxes owed as of the Closing date and cause the business to comply with all laws, including tax laws and regulations.

**ANSWER**:   For their answer to Paragraph 59 of the Complaint, Defendants deny the

allegations therein.  Defendants affirmatively state that BLRO mischaracterizes the cited sections

of the Asset Purchase Agreement.  Answering further, Defendants affirmatively state that,

pursuant to Section 10.4 of the Asset Purchase Agreement, all representations and warranties,

other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing.

60. Defendants' failure to pay the taxes and other expenses discussed above constitutes a material breach of their Covenants at Sections 6.3, 6.17 and 6.18 of the Asset Purchase Agreement. BLRO is entitled to damages, including consequential damages, as a result of that breach.

**ANSWER:** For their answer to Paragraph 60 of the Complaint, Defendants deny the allegations therein.

61. In the alternative, BLRO is entitled to indemnity pursuant to Sections 10.1(a), (c) and (d) of the Asset Purchase Agreement, which provide that BLRO is entitled to Damages for: (a) any breach of any of the covenants or agreements of the Selling Parties...; (c) any Unassumed Liability...; and (d) any Liabilities for pre-Closing tax obligations.

**ANSWER:** For their answer to Paragraph 61 of the Complaint, Defendants deny the allegations therein. Answering further, Defendants affirmatively state that pursuant to Section 10.4 of the Asset Purchase Agreement, any claim for indemnification must have been given by a "Claim Notice" under Section 10.3 on or before the applicable "Expiration Date" or the claim for indemnification is invalid. The Expiration Date for claims based upon any alleged breach of representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6, was May 30, 2010, the date of the Closing.

62. Pursuant to Section 10.3 of the Asset Purchase Agreement, entitled "Claims Period," on April 14, 2011, BLRO sent Defendants a claim notice seeking indemnity for all of the tax liabilities and expenses discussed above (the "April 14, 2011 Claim Notice").

**ANSWER:** For their answer to Paragraph 62 of the Complaint, Defendants deny the allegations therein. Answering further, Defendants affirmatively state that BLRO did not issue a Claim Notice in compliance with Section 10.3 of the Asset Purchase Agreement on or about April 14, 2011.

63.     Specifically, at Defendants' counsel's request, BLRO emailed Defendants' counsel a detailed spreadsheet explaining the nature of the above the claims as well as the amounts thereof.  The spreadsheet compared the estimated pre-Closing liabilities relied on in arriving at the purchase price at Closing with the actual payments BLRO made post-Closing for Defendants' pre-Closing liabilities and expenses.

**ANSWER**:     For their answer to Paragraph 63 of the Complaint, Defendants admit the

allegations therein, but deny that any of the information provided by either side to the then

ongoing discussions constituted a Claim Notice.

64.     In the April 14, 2011 Claim Notice, BLRO advised Defendants' counsel that BLRO had already paid $1,849,476 for these pre-Closing tax liabilities, expenses and associated professional fees.  This amount continues to grow.

**ANSWER**:     For their answer to Paragraph 64 of the Complaint, Defendants deny the

allegations therein.  Answering further, Defendants affirmatively state that BLRO did not issue a

Claim Notice in compliance with Section 10.3 of the Asset Purchase Agreement on or about

April 14, 2011.

65.     On two occasions, first on May 16, 2011 and again on May 23, 2011, counsel for BLRO contacted Defendants' counsel requesting a response to BLRO's April 14, 2011 Claim Notice.

**ANSWER**:     For their answer to Paragraph 65 of the Complaint, Defendants deny the

allegations therein.

66.     Defendants did not respond, and have not responded as of the date of filing of this Complaint, 228 days later.

**ANSWER**:     For their answer to Paragraph 66 of the Complaint, Defendants deny the

allegations therein.

67.     Section 10.3 of the Asset Purchase Agreement provides that "If any Indemnitor fails to give a Claim Response within the Response Period [30 calendar days], then such Indemnitor shall be deemed not to dispute the claim described in the related Claim Notice.  If any Indemnitor elects not to dispute a claim described in a Claim Notice, whether by failing to give a timely Claim

Response in accordance hereof or otherwise, then the amount of such claim shall be conclusively deemed to be an obligation of such Indemnitor."

**ANSWER**:    For their answer to Paragraph 67 of the Complaint, Defendants admit that

the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the

allegations of Paragraph 67 fairly represent the entirety of the agreement of the parties.

Answering further, Defendants deny that this provision is applicable to the facts of this case.

68.    As a result of Defendants' failure to respond to BLRO's Claim Notice as required by Section 10.3, BLRO is entitled to Damages in the amount of $1,849,476, which amount is deemed "conclusively" determined under Section 10.3 of the Asset Purchase Agreement.

**ANSWER**:    For their answer to Paragraph 68 of the Complaint, Defendants deny the

allegations therein.

69.    BLRO is also entitled to a declaration that it is entitled on an on-going basis to Damages as they are incurred and as expenses are paid with respect to all matters set forth in the April 14, 2011 Claim Notice.

**ANSWER**:    For their answer to Paragraph 69 of the Complaint, Defendants deny the

allegations therein.

70.    As a result of the tax issues identified during due diligence, BLRO went to great lengths to obtain assurances from Defendants that the Bar Louie business was otherwise in compliance with law.  BLRO also conducted other due diligence in an effort to uncover any additional non-tax noncompliance with law, including due diligence concerning licensing issues affecting the valuation and operation of the business.

**ANSWER**:    For their answer to Paragraph 70 of the Complaint, Defendants deny that

BLRO "went to great lengths to obtain assurances from Defendants" and admit the remaining

allegations therein.  Answering further, Defendants affirmatively state that the terms of the Asset

Purchase Agreement control and that any claims based upon alleged representations, warranties

and covenants not contained in the Asset Purchase Agreement are barred by the doctrine of

merger.

71.    Throughout due diligence and deal negotiations, Defendants assured BLRO of their compliance and memorialized those assurances in the representations, warranties and covenants sections of the Asset Purchase Agreement.

**ANSWER**:    For their answer to Paragraph 71 of the Complaint, Defendants deny the allegations therein.    Defendants affirmatively state that the terms of the Asset Purchase Agreement control and that any reference to alleged representation, warranties and covenants not contained in the Asset Purchase Agreement are barred by the doctrine of merger.    Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset Purchase Agreement, all representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing.

72.    In Section 4.6 of the Asset Purchase Agreement, entitled "Title to Purchased Assets and Related Matters," the Defendants represented and warranted that they "have good and marketable title to, valid leasehold interests in, or valid licenses to use all of the Purchased Assets, free from any Encumbrances except those specified in Section 4.6 of the Disclosure Schedule..." (emphasis added).

**ANSWER**:    For their answer to Paragraph 72 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 72 fairly represent the entirety of the agreement of the parties.

73.    In Section 6.3 of the Asset Purchase Agreement, entitled "Satisfaction of Liabilities," Defendants covenanted that "After the Closing, the Sellers shall (and the other Selling Parties shall cause the Sellers to) satisfy, in accordance with the terms thereof, any and all of their Liabilities that are not Assumed Liabilities."

**ANSWER**:    For their answer to Paragraph 73 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 73 fairly represent the entirety of the agreement of the parties. Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset

Purchase Agreement, all representations and warranties, other than the Fundamental

Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement,

expired at the Closing.

> 74.    In Section 6.18 of the Asset Purchase Agreement, entitled
> "Compliance with Laws," Defendants covenanted that "Between the date hereof
> and the Closing Date, the Selling Parties shall cause each of their Affiliates to,
> comply in all material respect[s] with the requirements of applicable Laws and all
> Court Orders applicable to them or the Business."

**ANSWER**:    For their answer to Paragraph 74 of the Complaint, Defendants admit that

the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the

allegations of Paragraph 74 fairly represent the entirety of the agreement of the parties.

Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset

Purchase Agreement, all representations and warranties, other than the Fundamental

Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement,

expired at the Closing.

> 75.    Since the Closing, BLRO has learned that these representations,
> warranties and covenants were false, and that Defendants' did not have the
> appropriate: (1) liquor licenses at certain restaurants; or (2) American Society of
> Composers, Authors and Publishers ("ASCAP") license.

**ANSWER**:    For their answer to Paragraph 75 of the Complaint, Defendants deny the

allegations therein.  Answering further, Defendants affirmatively state that, pursuant to Section

10.4 of the Asset Purchase Agreement, all representations and warranties, other than the

Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase

Agreement, expired at the Closing.

> 76.    Post-Closing, BLRO discovered that at restaurants located in
> Boynton Beach, FL and Orlando, FL, Defendants had intentionally and
> systematically mischaracterized certain alcoholic beverage sales as food sales, in
> clear contravention of law, to avoid the costs associated with mandated, more
> expensive state liquor licenses.

**ANSWER:**   For their answer to Paragraph 76 of the Complaint, Defendants deny the allegations therein.

77.   As a result of Defendants' mischaracterizations, the state liquor licenses for the restaurants located in Boynton Beach and Orlando, FL, and the Defendants' operation of those restaurants under those state liquor licenses, failed to comply with applicable law prior to and as of the Closing.

**ANSWER:**   For their answer to Paragraph 77 of the Complaint, Defendants deny the allegations therein.

78.   BLRO has already paid $372,922 to obtain the appropriate liquor licenses, and BLRO could continue to incur additional expenses.  BLRO has also incurred and continues to incur a significant amount of attorneys' and other professional fees in connection with this issue.

**ANSWER:**   For their answer to Paragraph 78 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.  Answering further, Defendants affirmatively state that any expenses paid by BLRO to obtain liquor licenses are the responsibility of BLRO pursuant an Interim Beverage Management Agreement effective May 30, 2010 between BLRO and Defendants.

79.   ASCAP sells companies, like bars and restaurants, a license to entertain their customers, guests and employees with music.  With one license fee, ASCAP saves companies the time, expense, and burden of contacting thousands of copyright owners for a license to play their music.

**ANSWER:**   For their answer to Paragraph 79 of the Complaint, Defendants admit the allegations therein.

80.   BLRO learned that certain Bar Louie Restaurants held live music and D.J. performances without having the appropriate ASCAP license, which would have allowed for those performances.

**ANSWER:**   For their answer to Paragraph 80 of the Complaint, Defendants deny the allegations therein.

81.   BLRO has already paid $39,000 to obtain the appropriate ASCAP license, and BLRO could continue to incur additional expenses.  BLRO has also

incurred and continues to incur a significant amount of attorneys' and other professional fees in connection with this issue.

**ANSWER**: For their answer to Paragraph 81 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

82. On October 4, 2010, BLRO notified Defendants of its claims concerning Defendants' failure to have the appropriate liquor and ASCAP licenses and requested indemnity from Defendants. On October 26, 2010, Defendants rejected those requests.

**ANSWER**: For their answer to Paragraph 82 of the Complaint, Defendants admit that BLRO sent Defendants a Claim Notice dated October 4, 2010, admit that Defendants provided a Claim Response on October 26, 2010 rejecting BLRO's Claim Notice, and deny the remaining allegations therein. Answering further, Defendants affirmatively state that pursuant to Section 10.4 of the Asset Purchase Agreement, BLRO's October 4, 2010 Claim Notice was untimely as any claim for indemnification must have been given by a "Claim Notice" under Section 10.3 on or before the applicable "Expiration Date" or the claim for indemnification is invalid. The Expiration Date for claims based upon any alleged breach of a representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6, was May 30, 2010, the date of the Closing.

83. The amounts paid by BLRO to secure the appropriate liquor and ASCAP license provisions are Unassumed Liabilities for which Defendants are responsible pursuant to Section 2.5 of the Asset Purchase Agreement.

**ANSWER**: For their answer to Paragraph 83 of the Complaint, Defendants deny the allegations therein.

84. Pursuant to Sections 6.3 and 6.18 of the Asset Purchase Agreement, Defendants covenanted that they would satisfy all Unassumed Liabilities and that they would cause the business to comply with all laws.

**ANSWER**:   For their answer to Paragraph 84 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset Purchase Agreement, all representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing.

      85.   Defendants' failure to have the appropriate liquor and ASCAP licenses constitutes breaches of their covenants at Sections 6.3 and 6.18 of the Asset Purchase Agreement. BLRO is entitled to damages, including consequential damages as a result of that breach.

**ANSWER**:   For their answer to Paragraph 85 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset Purchase Agreement, all representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing.

      86.   In the alternative, BLRO is entitled to indemnity pursuant to Sections 10.1(a), (c) and (k) of the Asset Purchase Agreement, which provide that BLRO is entitled to Damages for: "(a) any breach of any of the covenants or agreements of the Selling Parties ...; (c) any Unassumed Liability....[and]; (k) any breach of any Fundamental Representations [including Section 4.6]."

**ANSWER**:   For their answer to Paragraph 86 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that BLRO's claim for indemnification is untimely pursuant to Section 10.4 of the Asset Purchase Agreement having expired on May 30, 2010.

      87.   On September 22, 2010, Sun Capital Partners V ("SCPV"), which was not a party to the Transaction, received a Charge of Discrimination filed by Lakisha Drakes with the EEOC in Pittsburgh, Pennsylvania (Charge No. 533-2010-0127).  SCPV is an Affiliate of BLRO.

**ANSWER**:   For their answer to Paragraph 87 of the Complaint, Defendants state that

they are without sufficient knowledge to form a belief as to the truth or falsity of the allegation

that "SCPV is an Affiliate of BLRO" and admit the remaining allegations therein.

> 88.   Ms. Drakes alleges that pre-Closing, she endured sexual harassment, discrimination, retaliation and constructive discharge at one of Defendants' restaurants.

**ANSWER**:   For their answer to Paragraph 88 of the Complaint, Defendants admit that

Paragraph 88 accurately summarizes the allegations of the EEOC charge filed by Ms. Drakes

(the "Drakes EEOC Charge No. 1").

> 89.   Specifically, she alleges that she was harassed based on her race and gender, that she was discriminated against based on her race, and that she was retaliated against for complaining and reporting the misconduct.  She therefore claims to have been constructively discharged on May 3, 2010, less than one month prior to the Closing date under the Asset Purchase Agreement.

**ANSWER**:   For their answer to Paragraph 89 of the Complaint, Defendants admit that

Paragraph 89 accurately summarizes the allegations of the Drakes EEOC Charge No 1.

> 90.   All of the unlawful conduct was alleged to have occurred before the Closing date; therefore, the Damages arising therefrom are Unassumed Liabilities for which Defendants are responsible.

**ANSWER**:   For their answer to Paragraph 90 of the Complaint, Defendants deny the

allegations therein.

> 91.   Indeed, at Section 7.2(c) of the Asset Purchase Agreement, entitled "Employees," Defendants covenanted that, "Any and all Liabilities relating to or arising out of the employment, or cessation of employment, of any Seller Employee (whether or not a Transferred Employee) on or prior to the close of business on the Closing Date shall be the sole responsibility of the Sellers including wages and other remuneration due through the close of business on the Closing Date."

**ANSWER**:   For their answer to Paragraph 91 of the Complaint, Defendants admit the

allegations therein.

92.     Accordingly, SCVP filed a position statement with the EEOC on October 25, 2010 explaining that SCVP does not have any liability in connection with these events, which arose exclusively prior to the Closing of the Transaction, to which SCVP was not even a party.

**ANSWER**:     For their answer to Paragraph 92 of the Complaint, Defendants admit the allegations therein.

93.     Pursuant to Section 10.5 of the Asset Purchase Agreement, on October 18, 2010, BLRO sent a claim notice requesting that Defendants assume the defense of this third party action and that they take all necessary steps to have the Charge of Discrimination amended to reflect Ms. Drakes' actual employer at the time of the misconduct.

**ANSWER**:     For their answer to Paragraph 93 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that BLRO's notice relating to the Drakes EEOC Charge No. 1 constituted notice of an "Unliquidated Claim" (as that term is defined in Section 10.3(a) of the Asset Purchase Agreement) and that on September 15, 2010, BLRO admitted that it is not a respondent in the Drakes EEOC Charge No. 1, and therefore will not be required to defend or incur any expenses related to the Drakes EEOC Charge No. 1.  Defendants further affirmatively state that the Drakes EEOC Charge No. 1 was dismissed by the EEOC on November 1, 2011.

94.     Defendants did not respond.  However, upon information and belief, Defendants recently filed an answer to the charge of discrimination with the EEOC.

**ANSWER**:     For their answer to Paragraph 94 of the Complaint, Defendants admit the allegations therein.  Answering further, Defendants affirmatively state that no response was required pursuant to Section 10.3(a)(ii) of the Asset Purchase Agreement because the alleged claim notice pertained to an Unliquidated Claim.  Defendants further affirmatively state that the Drakes EEOC Charge No. 1 was dismissed by the EEOC on November 1, 2011.

95.     In the event BLRO incurs expenses in connection with the EEOC matter, BLRO is entitled to indemnity pursuant to Sections 10.1(a), (c) and (e) of

the Asset Purchase Agreement, which provide that BLRO is entitled to Damages for: "(a) any breach of any of the covenants or agreements of the Selling Parties...; (c) any Unassumed Liability....[and]; (e) any Liability arising out of or related to the actual or constructive termination of any employee..."

**ANSWER**:   For their answer to Paragraph 95 of the Complaint, Defendants deny the allegations therein.  Answering further, on September 15, 2010, BLRO admitted that it is not a respondent in the Drakes EEOC Charge No. 1, and therefore will not be required to defend or incur any expenses related to the Drakes EEOC Charge No. 1.  Defendants further affirmatively state that the Drakes EEOC Charge No. 1 was dismissed by the EEOC on November 1, 2011.

96.   As set forth above, Section 10.3 of the Asset Purchase Agreement provides that "If any Indemnitor fails to give a Claim Response within the Response Period, then such Indemnitor shall be deemed not to dispute the claim described in the related Claim Notice.  If any Indemnitor elects not to dispute a claim described in a Claim Notice, whether by failing to give a timely Claim Response in accordance hereof or otherwise, then the amount of such claim shall be conclusively deemed to be an obligation of such Indemnitor."

**ANSWER**:   For their answer to Paragraph 96 of the Complaint, Defendants reallege and incorporate by reference their answer to Paragraph 67 of the Complaint as though fully set forth herein.

97.   As a result of Defendants' failure to respond to BLRO's Claim Notice as required by Section 10.3, BLRO is entitled to a declaration that BLRO is entitled on an on-going basis to Damages and expenses as they are incurred, including attorneys' fees arising out the EEOC action.

**ANSWER**:   For their answer to Paragraph 97 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that no response was required pursuant to Section 10.3(a)(ii) of the Asset Purchase Agreement because the alleged Claim Notice pertained to an Unliquidated Claim.  Defendants further affirmatively state that the Drakes EEOC Charge No. 1 was dismissed by the EEOC on November 1, 2011, and as such, no damages or expenses or attorneys' fees will be incurred in said matter.

98.     On September 14, 2010, LaKisha Drakes filed another charge of discrimination with the EEOC in Pittsburgh, Pennsylvania, Charge No. 533-2010-01268 ("EEOC Charge No. 2"), the substantive allegations of which are identical to those set forth in Charge of Discrimination No. 533-2010-01270 referenced at Paragraphs 87-88 above ("EEOC Charge No. 1").

**ANSWER**: For their answer to Paragraph 98 of the Complaint, Defendants admit the allegations therein.     Defendants affirmatively state that the second EEOC charge filed by Ms. Drakes (the "Drakes EEOC Charge No. 2") was dismissed by the EEOC on November 1, 2011.

99.     While BLRO was not named as a Respondent in EEOC Charge No. 2, in August 2011, the charge was erroneously directed by the EEOC to a manager at one of BLRO's restaurants in Pittsburgh, PA, and upon information and belief, this was the result of misinformation provided by certain Defendants to the EEOC.

**ANSWER**: For their answer to Paragraph 99 of the Complaint, Defendants admit that BLRO is not named as a Respondent in the Drakes EEOC Charge No. 2.  Answering further, Defendants are without sufficient knowledge to form a belief as to the truth or falsity of the allegation that the "charge was erroneously directed by the EEOC to a manager at one of BLRO's restaurants in Pittsburgh, PA" and deny the remaining allegations therein.

100.     BLRO was contacted by the EEOC and asked to provide information to clarify representations that the Defendants made to the EEOC concerning BLRO's involvement in the underlying allegations.

**ANSWER**: For their answer to Paragraph 100 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

101.     BLRO advised the EEOC that BLRO is not the appropriate Respondent because: (a) BLRO is not and has never been Ms. Drakes' employer; (b) BLRO did not assume the liabilities with respect to this matter; and, to the contrary (c) the Defendants retained the liabilities for this matter.

**ANSWER**: For their answer to Paragraph 101 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

102.   As a result of Defendants' representations to the EEOC, BLRO has incurred expenses convincing the EFOC that it is not the appropriate Respondent, and BLRO could continue to incur additional expenses.

**ANSWER**: For their answer to Paragraph 102 of the Complaint, Defendants deny the allegations therein.  Answering further, BLRO has admitted that it is not a respondent in the Drakes EEOC Charge No. 2, and therefore was not required to defend or incur any expenses related to the Drakes EEOC Charge No. 2.  Defendants further affirmatively state that the Drakes EEOC Charge No. 2 was dismissed by the EEOC on November 1, 2011, and as such, no damages or expenses or attorneys' fees will be incurred in said matter.

103.   Pursuant to Sections 10.3 and 10.5 of the Asset Purchase Agreement, on September 25, 2011, BLRO sent a claim notice requesting that the Defendants assume the defense and acknowledge their indemnity obligations with respect to this action.

**ANSWER**: For their answer to Paragraph 103 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that BLRO's notice relating to the Drakes EEOC Charge No. 2 was sent on September 15, 2010, and constituted notice of an "Unliquidated Claim" (as that term is defined in Section 10.3(a) of the Asset Purchase Agreement) and that on September 15, 2010, BLRO admitted that it is not a respondent in the Drakes EEOC Charge No. 2, and therefore was not required to defend or incur any expenses related to the Drakes EEOC Charge No. 2.  Defendants further affirmatively state that the Drakes EEOC Charge No. 2 was dismissed by the EEOC on November 1, 2011, and as such, no damages or expenses or attorneys' fees will be incurred in said matter.

104.   On May 14, 2010, a putative Class Action Complaint was filed in the Superior Court of California, Case No. BC437844, alleging, among other

things, that prior to Closing, Defendants and certain other John Does violated a number of labor laws, including without limitation: (a) failure to pay overtime; (b) failure to provide meal periods; (c) failure to provide rest breaks; (d) willful failure to pay waiting time penalties for wages past due and owing; (e) failure to provide correct or itemized pay stubs; (f) failure to reimburse employees for reasonable expenses; and (g) unfair competition (the "Nunez Putative Class Action").

**ANSWER**: For their answer to Paragraph 104 of the Complaint, Defendants admit that

Paragraph 104 fairly summarizes the allegations of a putative Class Action complaint filed in the

Superior Court of California, Case No. BC437844 (the "Nunez Putative Class Action").

105.   The class alleged that Defendants devised, implemented and carried out a set of policies, patterns and, or practices which have been misinterpreted, misapplied and/or disregarded in violation of California's labor laws and that Defendants went so far as to coerce, require and compel their employees to forego those rights and entitlements to which they were entitled pursuant to those laws.

**ANSWER**: For their answer to Paragraph 104 of the Complaint, Defendants admit that

Paragraph 105 fairly summarizes the allegations of the Nunez Putative Class Action.

106.   On January 12, 2011, BLRO was named as one of the John Doe defendants. BLRO filed an Answer and is currently defending this action.

**ANSWER**:   For their answer to Paragraph 106 of the Complaint, Defendants admit the

allegations therein.

107.   On September 2, 2011, the Plaintiffs filed a First Amended Complaint, which, *inter alia*, added: (a) BLRO as a named defendant; (b) allegations that BLRO is liable pursuant to the joint employer and successorship doctrines for Defendants' actions; and (c) a wrongful termination claim based the alleged wrongful termination of one named plaintiff.  BLRO filed an answer to the First Amended Complaint on October 7, 2011.

**ANSWER**: For their answer to Paragraph 106 of the Complaint, Defendants admit the

allegations therein.

108.   Pursuant to Sections 10.3 and 10.5 of the Asset Purchase Agreement, on September 25, 2011, BLRO sent a claim notice to Defendants requesting that the Defendants confirm that this action is within the scope of their

indemnity obligations and agree to indemnity BLRO from any and all damages resulting from the action.

**ANSWER**: For their answer to Paragraph 108 of the Complaint, Defendants deny the allegations therein.   Defendants affirmatively state that BLRO's notice relating to the Nunez Putative Class Action was sent on September 15, 2010, and constituted notice of an "Unliquidated Claim" (as that term is defined in Section 10.3(a) of the Asset Purchase Agreement).  Answering further, to the extent the notice was sent pursuant to Section 10.5 of the Asset Purchase Agreement, BLRO has not complied with Section 10.5's requirement for indemnity and has elected to defend itself at its own cost.  Defendants further affirmatively state that there is no provision in the Asset Purchase Agreement which requires Defendants to confirm their obligations thereunder.

109.   On June 28, 2011, BLRO received a letter from counsel for Mr. Edward I. Blum and Ms. Eva. M. Blum seeking confirmation that BLRO's affiliate Sun Capital Partners, Inc. was the appropriate obligor for a judgment in the amount of $839,054.04 obtained by the Blums against Bar Louie Champaign, Inc. and Bar Louie America, Inc. in Champaign County, Illinois, Case No. 2009-L-45 (the "Blum Matter").

**ANSWER**: For their answer to Paragraph 109 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

110.   BLRO responded by advising that it had not assumed this judgment in connection with its acquisition of certain assets of the Bar Louie restaurant business.

**ANSWER**: For their answer to Paragraph 110 of the Complaint, Defendants state that they are without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein.

111.   Pursuant to Sections 10.3 and 10.5 of the Asset Purchase Agreement, on September 25, 2011, BLRO sent a claim notice to Defendants requesting that the Defendants confirm that this matter is within the scope of their

indemnity obligations and agree to indemnify BLRO from any and all damages resulting from the matter.

**ANSWER**: For their answer to Paragraph 111 of the Complaint, Defendants deny the allegations therein. Defendants affirmatively state that on September 15, 2010, BLRO admitted that it has not assumed the Blum Judgment, and therefore will not be required to defend or incur any expenses related to the Blum Judgment. Answering further, Defendants affirmatively state that there is no provision in the Asset Purchase Agreement which requires Defendants to confirm their obligations thereunder.

112.   On September 27, 2011, the Defendants responded to BLRO's September 25, 2011 claim notice concerning: (1) EEOC Charge: No. 2; (2) the Nunez Putative Class Action; and (3) the Blum Matter.

**ANSWER**: For their answer to Paragraph 112 of the Complaint, Defendants admit that on September 27, 2011 they responded to BLRO's September 15, 2011 claim letter and deny the remaining allegations therein.

113.   In their September 27, 2011 letter, Defendants acknowledge that BLRO is not a respondent to the EEOC Charge No. 2 and that BLRO has not assured the Blum Judgment in connection with its acquisition of certain assets of the Bar Louie restaurant business.

**ANSWER**: For their answer to Paragraph 113 of the Complaint, Defendants deny the allegations therein. Answering further, Defendants affirmatively state that in their September 27, 2011 letter they "acknowledged BLRO's advice" that BLRO was not a respondent in the charge of discrimination and that BLRO had not assumed the Blum Judgment.

114.   However, despite these acknowledgements, and with respect to all three matters, the Defendants refused to respond to BLRO's requests for defense and/or indemnity. Rather the Defendants contend that pursuant to the Asset Purchase Agreement, these are unliquidated claims and therefore no response is required at this time.

**ANSWER**: For their answer to Paragraph 114 of the Complaint, Defendants deny the allegations therein. Answering further, Defendants affirmatively state that BLRO is not a

Respondent the Drakes EEOC Charges Nos. 1 & 2 and to the extent BLRO choose to participate

in the Drakes EEOC Charges Nos. 1 & 2, it did so at its own expense pursuant to Section 10.5 of

the Asset Purchase Agreement.  Defendants further affirmatively state that the Drakes EEOC

Charges Nos. 1 & 2 were dismissed by the EEOC on November 1, 2011 and as such, no damages

or expenses or attorneys' fees will be incurred in said matters.  Defendants further affirmatively

state that BLRO has never requested the Defendants defend BLRO in the Blum Judgment or in

the Nunez Putative Class Action and to the extent BLRO chooses to participate in those actions,

it does so at its own expense pursuant to Section 10.5 of the Asset Purchase Agreement.  The

Blum Judgment is not an actual third party claim being asserted against BLRO.

> 115.   Accordingly, on November 7, 2011, BLRO wrote to Defendants
> explaining that these are not unliquidated claims because BLRO has already
> incurred substantial attorneys' fees in connection with all three matters and setting
> forth the amounts of those attorneys' fees.

**ANSWER**: For their answer to Paragraph 115 of the Complaint, Defendants admit that

BLRO wrote a letter to Defendants' dated November 7, 2011, and admit that BLRO claimed in

said letter that the claims were not unliquidated because BLRO had allegedly incurred attorneys'

fees.  Answering further, Defendants deny that the position set forth by BLRO in their November

7, 2011 letter is correct and deny the remaining allegations therein.

> 116.   On November 8, 2011, the Defendants responded again, alleging
> that a response was not required.

**ANSWER**: For their answer to Paragraph 116 of the Complaint, Defendants admit the

allegations therein.

> 117.   On October 28, 2011, Qwente Bryant, Lisa Cavanaugh, Candice
> Davis, Michael Lance Kennedy, Michael Lowery, Holly Richardson and Robin
> Tamburri filed a complaint in the United States District Court for the Central
> District of California, Case No. SACV 10-0906 DOC (AJWx), alleging, among
> other things, that prior to Closing certain of the defendants, SCPV, BLRO and
> certain other John Does violated labor laws, including without limitation: (1)
> failure to pay overtime pursuant to state and federal law; (2) failure to provide

meal periods; (3) failure to provide rest breaks; (4) failure to pay waiting time penalties for wages past due and owing; (5) failure to provide correct itemized pay stubs; (6) failure to reimburse employees for reasonable expenses; (7) breach of written and implied in fact contract; (8) false pretense and intentional misrepresentation; (9) retaliation and wrongful termination; and (10) unfair competition (the "Bryant Lawsuit").

**ANSWER**: For their answer to Paragraph 117 of the Complaint, Defendants admit that

Paragraph 117 fairly summarizes the allegations of a putative class action lawsuit filed in the

United States District Court for the Central District of California, Case No. SACV 10-00906-

DOC-AJW (the "Bryant Lawsuit").

118.   The complaint further alleges that Sun and BLRO are liable as successors to the liabilities of restaurants formerly owned and operated by the Defendants.

**ANSWER**: For their answer to Paragraph 118 of the Complaint, Defendants admit that

Paragraph 118 fairly summarizes one of the allegations in the Bryant Lawsuit.

119.   Pursuant to Sections 10.3 and 10.5 of the Asset Purchase Agreement, on November 10, 2011, BLRO sent a claim notice to the Defendants requesting that the Defendants acknowledge the Bryant Lawsuit is within the scope of their indemnity obligations and agree to indemnify BLRO from any and all damages resulting therefrom.

**ANSWER**: For their answer to Paragraph 119 of the Complaint, Defendants deny the

allegations therein.  Defendants affirmatively state that BLRO's November 10, 2011 purported

claim notice was not properly served in accordance with the Asset Purchase Agreement.  To the

extent the November 10, 2011 notice is considered a claim notice under the Asset Purchase

Agreement, it constituted notice of an "Unliquidated Claim" (as that term is defined in Section

10.3(a) of the Asset Purchase Agreement).  Answering further, to the extent the notice was sent

pursuant to Section 10.5 of the Asset Purchase Agreement, BLRO has not complied with Section

10.5's requirement for indemnity.  Defendants further affirmatively state that there is no

provision in the Asset Purchase Agreement which requires Defendants to confirm their obligations thereunder.

> 120.    On November 11, 2011, Defendants responded to BLRO's November 10, 2011 claim notice, again refusing to acknowledge that the Bryant action is within the scope of Defendants' indemnity obligations and again contending that a response is not required at this time.

**ANSWER**: For their answer to Paragraph 120 of the Complaint, Defendants admit the allegations therein.  Answering further, Defendants affirmatively state that BLRO has never requested the Defendants to defend BLRO in the Bryant Lawsuit and that there is no provision in the Asset Purchase Agreement which requires Defendants to confirm their obligations thereunder.

> 121.    Pursuant to Section 2.5 of the Purchase Agreement, the following matters are Unassumed Liabilities:
>
> a.    EEOC Charge Nos. 1 and 2;
>
> b.    the Nunez Putative Class Action;
>
> c.    the Blum Matter; and
>
> d.    the Bryant Lawsuit.

**ANSWER**: For their answer to Paragraph 121 of the Complaint, Defendants admit the allegations therein.

> 122.    In addition, at Section 7.2(c) of the Asset Purchase Agreement, entitled "Employees," the Selling Parties covenanted that, "Any and all Liabilities relating to or arising out of the employment, or cessation of employment, of any Seller Employee (whether or not a Transferred Employee) on or prior to the close of business on the Closing Date shall be the sole responsibility of the Sellers including wages and other remuneration due through the close of business on the Closing Date."

**ANSWER**: For their answer to Paragraph 122 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 122 fairly represent the entirety of the agreement of the parties.

123.   Further, Section 10.1, entitled "Indemnification…By the Selling Parties," provides that the "[Sellers] jointly and severally, shall indemnify, defend and hold harmless the Buyer…from and against any Liabilities, claims, demands, judgments, losses, costs, damages, or expenses whatsoever (including reasonable attorneys', consultants' and other professional fees and disbursements of every kind, nature and description incurred by such Indemnified Buyer Party in connection therewith including consequential and punitive damages) (collectively, "Damages") that such Indemnified Buyer Party may sustain, suffer, or incur and that result from, arise out of, or relate to: (a) any breach of any of the covenants or agreements of the Selling Parties contained in this Agreement or in the Closing Certificates… (c) any Unassumed Liability, regardless of whether or not the Disclosure Schedule discloses any such Unassumed Liability… (e) any Liability arising out of or related to the actual or constructive termination of any employee…"

**ANSWER**: For their answer to Paragraph 123 of the Complaint, Defendants admit that the selective excerpt from the Asset Purchase Agreement is accurately quoted, but deny that the allegations of Paragraph 123 fairly represent the entirety of the agreement of the parties. Answering further, Defendants affirmatively state that pursuant to Section 10.4 of the Asset Purchase Agreement, any claim for indemnification must have been given by a "Claim Notice" under Section 10.3 on or before the applicable "Expiration Date" or the claim for indemnification is invalid.  The Expiration Date for claims based upon any alleged breach of representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6, was May 30, 2010, the date of the Closing.

124.   BLRO is an "Indemnified Buyer Party" pursuant to <u>Section 10.1</u> of the Purchase Agreement.

**ANSWER**: For their answer to Paragraph 124 of the Complaint, Defendants admit the allegations therein.

125.   Defendants have breached the Asset Purchase Agreement by failing to assume the defense of the EEOC matter, and failing to reimburse and/or indemnify BLRO for the expenses BLRO has already incurred and refusing to acknowledge that all four of these matters are within the scope of their indemnity obligations.

**ANSWER**: For their answer to Paragraph 125 of the Complaint, Defendants deny the allegations therein.

126.   Pursuant to Sections 7.2(c) and 10.1(a), (c) and/or (e), BLRO is entitled to defense and/or indemnity from the Defendants with respect to these matters.

**ANSWER**: For their answer to Paragraph 126 of the Complaint, Defendants deny the allegations therein.

127.   The parties also executed a Transition Services Agreement on May 30, 2010, which sets forth the parties' obligations and entitlements to certain transition services with respect to the post-Closing operation of their respective businesses.

**ANSWER**:   For their answer to Paragraph 127 of the Complaint, Defendants admit the allegations therein.

128.   The parties specifically agreed at Section 4.4, entitled "No Additional Access to Personnel or Assets," that, "Except as specifically identified as Transition Services on Exhibit A, neither the Seller nor any of its Affiliates shall have any access to or authority over any of Buyer's personnel, assets, services or functions.  Without limiting the foregoing or any other remedies available to Buyer, if Seller or any of its Affiliates uses or accesses any of Buyer's personnel, assets, services or functions (...), Seller shall pay to Buyer a fee equal to Buyer's calculation of the cost of such personnel, assets, services or functions based on the amount of Seller's use thereof."

**ANSWER**:   For their answer to Paragraph 128 of the Complaint, Defendants deny that BLRO has accurately quoted Section 4.4 of the Transition Services Agreement and deny the remaining allegations therein.

129.   After the Closing Date, Defendant Kasemir directed certain employees of BLRO, including personnel in BLRO's human resources and information technology departments, to perform certain services for a non-Bar Louie business.

**ANSWER**:   For their answer to Paragraph 129 of the Complaint, Defendants deny the allegations therein.

130.   On October 4, 2010, BLRO notified Defendants of this issue and requested payment from Defendants in excess of $9,000.  Defendants rejected this request.

**ANSWER**:   For their answer to Paragraph 130 of the Complaint, Defendants admit the allegations therein.   Answering further, Defendants affirmatively state that the Transition Services Agreement provided that services pertaining to information technology would continue without fee for a period of 180 days after Closing, up to and including November 26, 2010. Under the express terms of the Transition Services Agreement, no fee was due to BLRO for information technology transition services occurring at any time before November 26, 2010.

131.   BLRO is entitled to be compensated for these amounts pursuant to the Transition Services Agreement.

**ANSWER**:   For their answer to Paragraph 131 of the Complaint, Defendants deny the allegations therein.

132.   Pursuant to Section 13 of the Asset Purchase Agreement, the parties acknowledged that BLRO, "shall have the right to setoff against any amounts owing to the Sellers by the Buyer... the full amount of any amounts owing or alleged to be owing from the Sellers to the Buyer."

**ANSWER**:   For their answer to Paragraph 132 of the Complaint, Defendants admit the allegations therein.

133.   Pursuant to Section 10.8(a) of the Closing Agreement and Amendment No. 1 to Asset Purchase Agreement dated May 30, 2010, the parties acknowledged that, "In addition to, and not in limitation of, any other rights set forth in this Agreement (including under Section 13), the Promissory Note shall be subject to a right of set-off in respect of any amounts payable (the "Claim Amount") by the Selling Parties pursuant to this Agreement, including under Section 2.6 and Section 10.  In the event that any such Claim Amount exists, then the Buyer and/or BL Restaurant Holding, LLC (the "Note Issuer") shall be entitled to offset against any amount payable pursuant to the Promissory Note an amount equal to three times the Claim Amount."

**ANSWER**:   For their answer to Paragraph 133 of the Complaint, Defendants admit that the selective excerpt from the Closing Agreement and Amendment No. 1 to Asset Purchase

Agreement is accurately quoted, but deny that the allegations of Paragraph 133 fairly represent the entirety of the agreement of the parties.

> 134.   Pursuant to Section 4 of the Subordinated Promissory Note dated May 30, 2010, entitled "Indemnification and Setoff," the parties agreed that, "Notwithstanding anything to the contrary set forth herein, any Vested Amounts owing under this Note and any interest accrued and payable with respect thereto are subject to the right of the Buyer (or any successor assignee of the Buyer) and its Affiliates to indemnification and setoff as set forth in Sections 10 and 13 of the Asset Purchase Agreement..."

**ANSWER**:   For their answer to Paragraph 134 of the Complaint, Defendants admit the allegations therein.

> 135.   BLRO is entitled to setoff any amounts recovered in connection with this action against any amounts owing to the Defendants by BLRO, including amounts owed to Defendants under the Promissory Note, warrants or otherwise.

**ANSWER**:   For their answer to Paragraph 135 of the Complaint, Defendants deny the allegations therein.   Answering further, Defendants affirmatively state that BLRO has not complied with the procedure required to assert a setoff as set forth in Section 10.8(iii) of the Asset Purchase Agreement, as amended by the Closing Agreement and Amendment No. 1 to Asset Purchase Agreement, and that the amount of setoff is limited to $1,000,000 pursuant to Section 10.8(iv) of the Asset Purchase Agreement, as amended by the Closing Agreement and Amendment No. 1 to Asset Purchase Agreement.

### Count I
### (Breach of Contract/Covenants - Asset Purchase Agreement)

> 136.   BLRO repeats and realleges each and every allegation contained in paragraphs 1 through 106 above.

**ANSWER**:   Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 106 above as their answer to Paragraph 136 of this Count I as though fully set forth herein.

137.   On or about December 30, 2009, BLRO and Defendants entered into the Asset Purchase Agreement.

**ANSWER**:   For their answer to Paragraph 137 of the Complaint, Defendants admit the allegations therein.

138.   The Asset Purchase Agreement is a valid and enforceable agreement between BLRO and Defendants.

**ANSWER**:   For their answer to Paragraph 138 of the Complaint, Defendants admit the Asset Purchase Agreement, in accordance with its terms and as amended, is a valid and enforceable agreement between BLRO and Defendants.

139.   BLRO has complied with its obligations under the Asset Purchase Agreement.

**ANSWER**:   For their answer to Paragraph 139 of the Complaint, Defendants deny the allegations therein.

140.   As set forth above in paragraphs 21-86 above, Defendants have materially breached the Covenants in the Asset Purchase Agreement, including specifically Sections 6.3, 6.17, and 6.18.

**ANSWER**:   For their answer to Paragraph 140 of the Complaint, Defendants deny the allegations therein.  Answering further, Defendants affirmatively state that, pursuant to Section 10.4 of the Asset Purchase Agreement, all representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing.

141.   As a direct and proximate result of Defendants' breaches of the Asset Purchase Agreement, BLRO has incurred and will continue to incur Damages, including consequential damages in the form of attorneys' and other professional fees, in a total amount to be established at trial.

**ANSWER**:   For their answer to Paragraph 141 of the Complaint, Defendants deny the allegations therein.

142.   In accordance with the terms of the Asset Purchase Agreement, BLRO is entitled to a judgment requiring Defendants to reimburse it for all Damages incurred in connection with the foregoing matters.

**ANSWER:**   For their answer to Paragraph 142 of the Complaint, Defendants deny the allegations therein.

### Count II
### (Breach of Indemnity Obligations - Asset Purchase Agreement)

143.   BLRO repeats and realleges each and every allegation contained in paragraphs 1 through 113 above.

**ANSWER:**   Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 113 above as their answer to Paragraph 143 of this Count II as though fully set forth herein.

144.   On or about December 30, 2009, BLRO and Defendants entered into the Asset Purchase Agreement.

**ANSWER:**   For their answer to Paragraph 144 of the Complaint, Defendants admit the allegations therein.

145.   The Asset Purchase Agreement is a valid and enforceable agreement between BLRO and Defendants.

**ANSWER:**   For their answer to Paragraph 145 of the Complaint, Defendants admit the Asset Purchase Agreement, in accordance with its terms and as amended, is a valid and enforceable agreement between BLRO and Defendants.

146.   BLRO has complied with its obligations under the Asset Purchase Agreement.

**ANSWER:**   For their answer to Paragraph 146 of the Complaint, Defendants deny the allegations therein.

147.   As set forth above in paragraphs 21-126 above, Defendants have materially breached the Asset Purchase Agreement by failing and refusing to defend, indemnify and hold harmless BLRO from and against the Damages (as defined in the Asset Purchase Agreement) arising out of Defendants' breaches of

the Asset Purchase Agreement, including their breaches of Sections 2.5, 4.6, 6.3, 6.17, 6.18, and 10.1(a), (c), (d) and (k).

**ANSWER**:   For their answer to Paragraph 147 of the Complaint, Defendants deny the allegations therein.

148.   As a direct and proximate result of Defendants' breaches of the Asset Purchase Agreement and failure and refusal to indemnify under the Asset Purchase Agreement, BLRO has incurred and will continue to incur Damages, in a total amount to be established at trial.

**ANSWER**:   For their answer to Paragraph 148 of the Complaint, Defendants deny the allegations therein.

149.   In accordance with the terms of the Asset Purchase Agreement, BLRO is entitled to a judgment requiring Defendants to indemnify and hold it harmless from, and to reimburse it for, all Damages incurred in connection with the foregoing matters.

**ANSWER**:   For their answer to Paragraph 149 of the Complaint, Defendants deny the allegations therein.

**Count III**
**(Declaratory Judgment)**

150.   BLRO repeats and realleges each and every allegation contained in paragraphs 1 through 120 above.

**ANSWER**:   Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 120 above as their answer to Paragraph 150 of this Count III as though fully set forth herein.

151.   As set forth above in paragraphs 21-126 above, certain of the matters alleged herein involve Damages that are, at present, uncertain in amount and are dependent on: (a) whether BLRO receives future tax assessments and incurs other reimbursable expenses; (b) whether BLRO incurs additional expenses in connection with deficient liquor and/or ASCAP licenses; and (e) the outcome of the EEOC claim identified above.

**ANSWER**:   For their answer to Paragraph 151 of the Complaint, Defendants deny the allegations therein.  Defendants affirmatively state that BLRO's claims for future uncertain tax

assessments, future expenses in connection with liquor or ASCAP licenses and other future

unknown expenses are speculative and contingent and not ripe for adjudication.   Answering

further, on November 1, 2011, the Drakes EEOC Charges Nos. 1 & 2 were dismissed by the

EEOC, and as such, no damages or expenses or attorneys' fees will be incurred in said matters,

and BLRO's request for indemnification or defense is moot.

      152.   The matters set forth above are ripe for a determination by the
Court because Defendants have either expressly refused to indemnify, defend and
hold harmless BLRO from and against, and to reimburse BLRO with respect to all
Damages relating to their breaches of the Asset Purchase Agreement, including
their breaches of Sections 2.5, 4.6, 6.3, 6.17, 6.18, 7.2(a), and 10.1(a), (c), (d), (e)
and (k), or Defendants have failed to respond to BLRO's requests to address such
matters.

**ANSWER**:   For their answer to Paragraph 152 of the Complaint, Defendants deny the

allegations therein.   Answering further, Defendants affirmatively state that (a) BLRO's claims

for indemnity have expired pursuant to Section 10.4 of the Asset Purchase Agreement, (b)

BLRO's alleged "Claim Notices" did not comply with Section 10.3 of the Asset Purchase

Agreement, and (c) BLRO has never requested the Defendants to defend BLRO in the Blum

Judgment, the Nunez Putative Class Action or the Bryant Lawsuit, and to the extent BLRO

chooses to participate in those actions, it does so at its own expense pursuant to Section 10.5 of

the Asset Purchase Agreement.

      153.   Declaratory relief is proper because there is a substantial
controversy between parties having adverse legal interests, of sufficient
immediacy and reality to warrant the issuance of declaratory judgment.

**ANSWER**:   For their answer to Paragraph 153 of the Complaint, Defendants deny the

allegations therein.

      154.   BLRO has no adequate remedy at law.

**ANSWER**:   For their answer to Paragraph 154 of the Complaint, Defendants deny the

allegations therein.

155.   Therefore, BLRO is entitled to a judgment declaring that Defendants are required to indemnify and hold BLRO harmless and reimburse BLRO for all Damages, including consequential damages, arising out of or related to the matters alleged above, including, without limitation, a judgment obligating Defendants to reimburse BLRO for all Damages as and when such Damages are incurred and paid in connection with the foregoing matters.

**ANSWER:**   For their answer to Paragraph 155 of the Complaint, Defendants deny the allegations therein.

## Count IV
### (Breach of Contract - Transition Services Agreement)

156.   BLRO repeats and realleges each and every allegation contained in paragraphs 1 through 126 above.

**ANSWER:**   Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 126 above as their answer to Paragraph 156 of this Count IV as though fully set forth herein.

157.   On or about May 30, 2010, BLRO and Defendants entered into the Transition Services Agreement.

**ANSWER:**   For their answer to Paragraph 157 of the Complaint, Defendants admit the allegations therein.

158.   The Transition Services Agreement is a valid and enforceable agreement between BLRO and Defendants.

**ANSWER:**   For their answer to Paragraph 158 of the Complaint, Defendants admit the Transition Services Agreement, in accordance with its terms, is a valid and enforceable agreement between BLRO and Defendants.

159.   BLRO has complied with its obligations under the Transition Services Agreement.

**ANSWER:**   For their answer to Paragraph 159 of the Complaint, Defendants deny the allegations therein.

160.   As set forth in paragraphs 127-131 above, Defendants have materially breached the requirements of Section 4.4 of the Transition Services Agreement.

**ANSWER**:   For their answer to Paragraph 160 of the Complaint, Defendants deny the allegations therein.

161.   As a direct and proximate result of Defendants' breach of the Transition Services Agreement, BLRO has incurred and will continue to incur Damages, in a total amount to be established at trial,

**ANSWER**:   For their answer to Paragraph 161 of the Complaint, Defendants deny the allegations therein.

162.   In accordance with the terms of the Transition Services Agreement, BLRO is entitled to a judgment requiring Defendants to reimburse it for, all Damages incurred in connection with the foregoing matters.

**ANSWER**:   For their answer to Paragraph 162 of the Complaint, Defendants deny the allegations therein.

## AFFIRMATIVE DEFENSES

Defendants, for their Affirmative Defenses to BLRO's Complaint, state and allege as follows:

### First Affirmative Defense

1.   To the extent BLRO is not acting in good faith in commencing and prosecuting this action, it is barred from enforcing any rights it may otherwise have.

### Second Affirmative Defense

2.   The Asset Purchase Agreement and its Transaction Documents (as defined in the Asset Purchase Agreement) are, by their express terms, a complete manifestation of the parties' agreement.   The doctrine of merger bars any claims based upon pre-contractual covenants, warranties and representations not contained within the Asset Purchase Agreement and its Transaction Documents.

45

### Third Affirmative Defense

3.      BLRO assumed the risk that there were additional liabilities for sales taxes, liquor licenses and other Assumed Liabilities that it or its agents might not discover prior to Closing. Defendants gave BLRO full access to its businesses and sales records as part of the pre-Closing due diligence period.  BLRO retained financial advisors, Price Waterhouse Coopers, to conduct extensive due diligence as to all reports of sales and tax issues.  The fee for this due diligence cost hundreds of thousands of dollars, a substantial part of which was paid by Defendants through the Credit Agreement and through credits at Closing.  BLRO also retained counsel to investigate and obtain the liquor licenses and require the liquor license transfers.  BLRO was or should have been fully aware of the pre-Closing liabilities and assumed the risk of additional Assumed Liabilities when it elected to close.

### Fourth Affirmative Defense

4.      Any expenses paid by BLRO that were not required to be paid by BLRO under the Asset Purchase Agreement were voluntarily undertaken by BLRO and Defendants are not responsible for BLRO's voluntary assumption of these obligations.

### Fifth Affirmative Defense

5.      BLRO's claims for alleged damages related to obtaining liquor licenses are barred by the express terms of the Interim Beverage Management Agreement effective May 30, 2010 between BLRO and Defendants, which rendered the obtainment of liquor licenses the responsibility of BLRO.

### Sixth Affirmative Defense

6.      BLRO's claim for alleged damages related to Defendants' use of information technology services post-Closing up through October 4, 2010, is barred by the express terms of

the Transition Services Agreement, which provided that services pertaining to information technology would continue without fee for a period of 180 days after Closing, up to and including November 26, 2010.

## Seventh Affirmative Defense

7.      BLRO's claims for the breaches of covenants, warranties and representations alleged in the Complaint have expired pursuant to Section 10.4 of the Asset Purchase Agreement, which provides that all representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6 of the Asset Purchase Agreement, expired at the Closing on May 30, 2010.  BLRO's Complaint does not allege breach of the Fundamental Representations.

## Eighth Affirmative Defense

8.      BLRO's claims for indemnity have expired pursuant to Section 10.4 of the Asset Purchase Agreement.  Any claim for indemnification must have been given by a "Claim Notice" under Section 10.3 on or before the applicable "Expiration Date" or the claim for indemnification is invalid.  The Expiration Date for claims based upon any alleged breach of representations and warranties, other than the Fundamental Representations contained in Sections 4.1, 4.2, 4.3 and 4.6, was May 30, 2010, the date of the Closing.  BLRO's Complaint does not seek indemnity for any alleged damages caused by alleged breaches of the Fundamental Representations.

## Ninth Affirmative Defense

9.      BLRO's alleged "Claim Notices" did not comply with Section 10.3 of the Asset Purchase Agreement.  Specifically, the alleged April 14, 2011 Claim Notice was not a Claim Notice as defined and required by Section 10.3 of the Asset Purchase Agreement and the

November 10, 2011 claim notice was not properly served in accordance with the Asset Purchase Agreement.

### Tenth Affirmative Defense

10.     The Claim Notices pertaining to the Drakes EEOC Charge Nos. 1 and 2, the Nunez Matter and the Bryant Lawsuit are Unliquidated Claims and no response was or is required. Defendants timely responded to all Liquidated Claim Notices.

### Eleventh Affirmative Defense

11.     On September 15, 2010, BLRO admitted in writing that it has not assumed the Blum Judgment, and therefore will not be required to defend or incur any expenses related to the Blum Judgment.

### Twelfth Affirmative Defense

12.     On November 1, 2011, the Drakes EEOC Charges Nos. 1 & 2 were dismissed by the EEOC, and as such, no damages or expenses or attorneys' fees will be incurred in said matters, and BLRO's request for indemnification or defense is moot.

### Thirteenth Affirmative Defense

13.     BLRO has never requested the Defendants to defend BLRO in the Blum Judgment, the Nunez Putative Class Action or the Bryant Lawsuit, and to the extent BLRO chooses to participate in those actions, it does so at its own expense pursuant to Section 10.5 of the Asset Purchase Agreement.

### Fourteenth Affirmative Defense

14.     To the extent that BLRO seeks relief for alleged damages not incurred, or for alleged breaches of the Asset Purchase Agreement and Transition Services Agreement not yet occurred, such claims are speculative, contingent and not ripe for determination.

### Fifteenth Affirmative Defense

15.    To the extent that BLRO is deemed to have stated a claim for breach of the Asset Purchase Agreement or Transition Services Agreement, which Defendants deny, such claim is barred because as set forth in Defendants' Counterclaims III and IV, BLRO breached its implied duty of good faith and fair dealing and fraudulently induced Defendants to enter into the Asset Purchase Agreement and Subordinated Promissory Note, and such fraudulent behavior and BLRO's unclean hands bar BLRO from any recovery under the Asset Purchase Agreement and make BLRO liable for all of the damages claimed by Defendants in their Counterclaims.

WHEREFORE, Defendants 701 America, Inc. (f/k/a Bar Louie America, Inc.), 706 Development, Inc. (f/k/a Bar Louie Development, Inc.), 100 Trademark, Inc. (f/k/a Bar Louie Trademark, Inc.), Concepts America, Inc., Roger A. Greenfield Revocable Trust, Roger A. Greenfield, and Theodore Kasemir respectfully request that this Honorable Court enter judgment in their favor and against Plaintiff BL Restaurant Operations, LLC, on Plaintiff's First Amended Complaint, and any further and other relief this Court deems appropriate.

Respectfully submitted,

701 AMERICA, INC. (f/k/a Bar Louie America, Inc.), 706 DEVELOPMENT, INC. (f/k/a Bar Louie Development, Inc.), 100 TRADEMARK, INC. (f/k/a Bar Louie Trademark, Inc.), CONCEPTS AMERICA, INC., ROGER A. GREENFIELD REVOCABLE TRUST, ROGER A. GREENFIELD, and THEODORE KASEMIR

By: /s/ Diana H. Psarras
     One of their Attorneys

Robert M. Winter (*pro hac vice*)
Vincent T. Borst (*pro hac vice*)
Diana H. Psarras (*pro hac vice*)
ROBBINS, SALOMON & PATT, LTD.
Attorneys for Defendants/Counterclaimants
25 E. Washington, Suite 1000
Chicago, IL 60602
ph: 312-782-9000
fax: 312-782-6690
rwinter@rsplaw.com
vborst@rsplaw.com
dpsarras@rsplaw.com

Dated:  February 28, 2012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2012 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Troy S. Brown tsbrown@morganlewis.com

Margot Giselle Bloom margot.bloom@morganlewis.com

Rebecca J. Hillyer rhillyer@morganlewis.com

Matthew David Donovan mdonovan@farrellfritz.com

Robert McKenna Winter rwinter@rsplaw.com

Vincent Thomas Borst vborst@rsplaw.com

Diana H. Psarras dpsarras@rsplaw.com


and I hereby certify that I have mailed by U.S. Postal Service the document to the following non-CM/ECF participants: None.


/s/Diana H. Psarras




Robert M. Winter (*pro hac vice*)
Vincent T. Borst (*pro hac vice*)
Diana H. Psarras (*pro hac vice*)
ROBBINS, SALOMON & PATT, LTD.
Attorneys for Defendants/Counterclaimants
25 E. Washington, Suite 1000
Chicago, IL 60602
ph: 312-782-9000
fax: 312-782-6690
rwinter@rsplaw.com
vborst@rsplaw.com
dpsarras@rsplaw.com